**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAYS INNS WORLDWIDE, INC.,** a Delaware Corporation,<br><br>**Plaintiff,**<br><br>v.<br><br>**DB VANCOUVER, LLC,** a Washington Limited Liability Company; **JAYANTI PATEL,** an individual; **SANT PRAKASH BHAGAT,** an individual; **PRANAV PATEL,** an individual; **PANKAI BHAGAT,** an individual; **JATIN BHAGAT,** an individual; and **SUBHASH CHANDRA KHAROD,** an individual,<br><br>**Defendants.** | Civil Action No. 12-4781 (ES)<br><br>**OPINION & ORDER** |

**SALAS, DISTRICT JUDGE**

Pending before the Court is Plaintiff Days Inns Worldwide, Inc.'s ("DIW") unopposed motion for summary judgment on the Sixth Count of its Complaint against Sant Prakash Bhagat, Pranav Patel, Pankai Bhagat, and Jatin Bhagat (collectively "Defendants").[1] The Court decides this motion without oral argument in accordance with Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants DIW's motion for summary judgment with prejudice.

---

[1] DIW does not seek summary judgment against the remaining defendants in the case.

I.        **Factual Background[2]**

DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey.  (SMF ¶ 1).  DIW does not operate or own any hotels.  (*Id.* ¶ 3).  Rather, DIW operates a guest lodging facility franchise system that consists of federally-registered trade names, service marks, logos and derivations therof (i.e. the "Days Inn® Marks"), and the Days Inn® System. (*Id.*).  Defendants Sant Prakash Bhagat and Jatin Bhagat are California citizens.  (*Id.* ¶¶ 4, 7). Defendants Pranav Patel and Pankai Bhagat are Oregon citizens.  (*Id.* ¶¶ 5-6).

On September 18, 2008, DIW entered into a franchise agreement (the "Franchise Agreement" or the "Agreement") with DB Vancouver, LLC ("DB Vancouver") for the operation of a fifty-eight room Days Inn® guest lodging facility located in Vancouver, Washington.  (*Id.* ¶ 8; D.E. No. 37-5, Affidavit of Suzanne Fenimore in Support of Plaintiff's Motion for Summary Judgment ("Fenimore Aff."), Ex. A ("Franchise Agr.")).  Section 5 of the Franchise Agreement obligated DB Vancouver to operate the guest lodging facility for a fifteen-year term.  (SMF ¶ 9). The Franchise Agreement required DB Vancouver to make periodic payments to DIW for royalties, taxes, interest, service assessments, reservation system user fees, among other fees (collectively "Recurring Fees").  (*Id.* ¶ 10).  Pursuant to Section 7.3 of the Franchise Agreement, interest was payable "on any past due amount payable to [DIW] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."  (Franchise Agr. § 7.3; *see also* SMF ¶ 15).

---

[2] The background facts are taken from DIW's Statement of Undisputed Material Facts in accordance with Local Civil Rule 56.1.  (D.E. No. 37-2, Statement of Undisputed Material Facts ("SMF")).  Since Defendants failed to oppose the motion for summary judgment, the Court "will accept as true all material facts set forth by the moving party with appropriate record support."  *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

Pursuant to Section 11.2 of the Franchise Agreement, DIW could terminate the Agreement, with notice to DB Vancouver, if DB Vancouver ceased to operate the guest lodging facility as a Days Inn® guest lodging establishment or lost possession or the right to possession of the facility. (SMF ¶ 18).  Pursuant to section 12.1 of the Franchise Agreement, DB Vancouver agreed that, in the event of a termination of the Agreement, it would pay liquidated damages to DIW in accordance with a formula detailed in the Agreement.  (*Id.* ¶¶ 19-20).  Pursuant to section 17.4 of the Franchise Agreement, the non-prevailing party would be obligated to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."  (Franchise Agr. § 17.4; *see also* SMF ¶ 21).

Defendants are personal guarantors to the Franchise Agreement.   (SMF ¶¶ 24-32).  Effective as of September 18, 2008, the date of the Franchise Agreement, Defendants provided DIW with a guaranty (the "Guaranty") of DB Vancouver's obligations under the Agreement.  (*Id.* ¶ 24; Fenimore Aff., Ex. B ("Guaranty")).  Pursuant to the terms of the Guaranty, Defendants agreed that, upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [DB Vancouver] to perform, each unpaid or unperformed obligation of [DB Vancouver] under the Agreement."  (Guaranty; *see also* SMF ¶ 33).  The Guaranty incorporated section 17 of the Franchise Agreement by reference.  (SMF ¶ 34).  Thus, pursuant to the terms of the Guaranty, Defendants agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Franchise Agreement or Guaranty.  (*Id.*).

On or about January 31, 2012, DB Vancouver ceased to operate its facility as a Days Inn® guest lodging establishment.  (*Id.* ¶ 35).  By letter to DB Vancouver dated January 31, 2012, DIW

3

noted DB Vancouver's unilateral termination of the Franchise Agreement and advised DB Vancouver that it was obligated to pay DIW liquidated damages for premature termination in the amount of $58,000.00 as well as all outstanding Recurring Fees through the date of termination. (*Id.* ¶ 36).  Defendants have failed to timely pay the Recurring Fees and liquidated damages due to DIW.  (*Id.* ¶ 37).

## II.   Procedural History

On July 31, 2012, DIW commenced this action by filing a six-count complaint against Defendants in the United States District Court for the District of New Jersey.  (D.E. No. 1, Compl.). The Complaint asserts claims arising from the breach and premature termination of the Franchise Agreement as well as the breach of the Guaranty.  (*Id.*).  The Sixth Count, which is the only count at issue, alleges that Defendants agreed "that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of DB Vancouver under the Franchise Agreement," and that they "have failed to make any payments or perform or cause DB Vancouver to perform each obligation required under the Franchise Agreement."  (*Id.* ¶¶ 53-54).  Furthermore, the Sixth Count seeks outstanding Recurring Fees, liquidated damages, interest, attorneys' fees, and costs.  (*Id.* at 12).

On October 23, 2013, DIW requested that the Clerk of the Court enter default against Defendants for failure to plead or otherwise defend the action.  (D.E. No. 9).  The following day, the Clerk of the Court entered default against Defendants.  (D.E. dated Oct. 24, 2012).  On December 27, 2012, the Court granted the parties' Consent Order, vacated the default, and allowed Defendants to file a late answer.  (D.E. No. 17).  Defendants subsequently filed an Answer to the Complaint on January 3, 2013.  (D.E. No. 19).  On December 20, 2013, Magistrate Judge Joseph A. Dickson ordered that all dispositive motions in this matter be filed by January 24, 2014.  (D.E.

No. 35).  Accordingly, DIW filed its motion for summary judgment on January 24, 2014.  (D.E.

No. 37).  Defendants have not opposed this motion, and the motion is now ripe for adjudication.[3]

## III.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, a court must consider all facts and their reasonable inferences in the light most favorable to the nonmoving party.  *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

On a summary judgment motion, the moving party bears the initial burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial.  *Id.* at 324.  In opposing summary judgment, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The nonmoving party cannot rest upon the mere allegations or denials in its pleadings.  *See Celotex*, 477 U.S. at 324.  Furthermore, the nonmoving party cannot rely on speculation and conclusory allegations to defeat summary judgment.  *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).

---

[3] The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, since there is complete diversity between the parties and the amount in controversy exceeds $75,000.  (Compl. ¶¶ 1-10).  The Court has personal jurisdiction over Defendants by virtue of the Guaranty, which incorporates section 17 of the Franchise Agreement.  (*See* Guaranty).  Pursuant to section 17.6.3 of the Franchise Agreement, the parties have consented "to the non-exclusive personal jurisdiction of . . . the United States District Court for the District of New Jersey."  (Franchise Agr. § 17.6.3).  Likewise, venue is proper because, pursuant to section 17.6.3 of the Agreement, the parties consented to "venue in . . . the United States District Court for the District of New Jersey.  (*Id.*).

IV.     **Discussion**

    **A.  DIW Is Entitled to Summary Judgment on its Breach of Guaranty Claim Against Defendants**

DIW alleges that Defendants breached the Guaranty by failing to pay the amount due to DIW as a result of the premature termination of the Franchise Agreement.  (Compl. ¶¶ 53-55). Pursuant to the choice of law provision set forth in section 17.6.1 of the Franchise Agreement, which the Guaranty incorporates by reference, New Jersey law governs DIW's breach of guaranty claim.  (Franchise Agr. § 17.6.1; Guaranty (incorporating by reference section 17 of the Franchise Agreement)).  To be entitled to judgment on a guaranty, a plaintiff must demonstrate the following:

    1)    execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee);

    2)    the principal obligation and terms of the guaranty;

    3)    the lender's reliance on the guaranty in extending monies to the borrower;

    4)    default by the principal obligator;

    5)    written demand for payment on the guarantee;

    6)    failure of the guarantor to pay upon written demand.

*Consol. Brick & Bldg. Supplies, Inc. v. Alosi Const., Inc.*, No. 05-1490, 2006 WL 2135805, at *6 (D.N.J. July 28, 2006) (quoting *United States v. DelGuercio*, 818 F. Supp. 725, 727-28 (D.N.J. 1993)).

DIW is entitled to summary judgment on its breach of guaranty claim.  As to the first prong, it is undisputed that Defendants each executed the Guaranty and had an opportunity to read the Guaranty before signing it.  (*See* Guaranty; *see also* Fenimore Aff. ¶ 26; D.E. No. 37-3, Certification of Bryan P. Couch ("Couch Cert."), Ex. A at 9-10, ¶¶ 5-12).

As to the second prong, the terms of the Guaranty plainly provide that Defendants must "immediately make each payment and perform or cause [DB Vancouver] to perform, each unpaid or unperformed obligation of [DB Vancouver] under the [Franchise] Agreement." (Guaranty). As to the third prong, DIW relied upon the Guaranty when entering into the Franchise Agreement with Defendants. According to the express terms of the Guaranty, the purpose of the Guaranty was to induce DIW to sign the Franchise Agreement with DB Vancouver. (*Id.*). As to the fourth prong, it is undisputed that DB Vancouver, the principal obligator, defaulted under the terms of the Franchise Agreement. On January 31, 2012, DB Vancouver unilaterally terminated the Agreement by ceasing to operate the guest lodging facility as a Days Inn® guest lodging facility. (Fenimore Aff. ¶ 29). This unilateral termination constituted a breach of the Franchise Agreement pursuant to section 11.2 of the Agreement. (Fenimore Aff. ¶ 20; Franchise Agr. § 11.2). As to the fifth prong, DIW made a written demand for payment on the Guaranty. By letter dated January 31, 2012, DIW acknowledged DB Vancouver's unilateral termination of the Franchise Agreement and informed DB Vancouver that it was required to pay DIW $58,000 in liquidated damages for the premature termination of the Agreement as well as all outstanding Recurring Fees up to the date of termination. (Fenimore Aff. ¶ 30; Fenimore Aff., Ex. C). Finally, the sixth prong is met because Defendants have failed to pay the amounts owed despite DIW's written demand for payment. (Fenimore Aff. ¶ 31; Couch Cert., Ex. A at 10, ¶¶ 13-14).

**B.  DIW Is Entitled to Summary Judgment on Damages**

DIW claims that Defendants are liable under the Franchise Agreement for outstanding Recurring Fees, liquidated damages, prejudgment interest, attorneys' fees, and costs. (Compl. at 12; Fenimore Aff. ¶¶ 33-43).

Where the terms of a contract are clear and unambiguous, it is proper for the Court to determine the contract's meaning as a matter of law. *See Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001). In the instant matter, the Court finds that the Guaranty, the termination provision in the Franchise Agreement (section 11.2), and the provisions governing Recurring Fees (sections 7 and 18.2, and Schedule C), liquidated damages (sections 12.1 and 18.1), prejudgment interest (section 7.3), and attorneys' fees and costs (section 17.4) are clear and unambiguous.

1.      *Recurring Fees*

Pursuant to the clear and unambiguous terms of the Guaranty and section 7, section 18.2, and Schedule C of the Franchise Agreement, Defendants were obligated to pay Recurring Fees to DIW. (Fenimore Aff. ¶ 12; Franchise Agr. §§ 7, 18.2, and Schedule C). Nonetheless, Defendants failed to comply with their financial obligations and did not pay the Recurring Fees due to DIW under the Franchise Agreement. (SMF ¶ 37). Accordingly, the Court grants summary judgment to DIW in the amount of $143,812.60 as Recurring Fees (inclusive of prejudgment interest, which is discussed below). (*See* Fenimore Aff. ¶¶ 33-34; Fenimore Aff., Ex. D).

2.      *Liquidated Damages*

As noted above, the Franchise Agreement provisions governing liquidated damages are clear and unambiguous. Pursuant to section 12.1 of the Franchise Agreement and the Guaranty, Defendants agreed that, in the event of a termination of the Agreement pursuant to section 11.2, they would pay liquidated damages to DIW in accordance with a formula specified in section 18.1 of the Agreement. (Franchise Agr. § 12.1; Guaranty).

A liquidated damages clause is valid where such a clause "constitute[s] a reasonable forecast of the provable injury resulting from [the] breach," and where harm "is incapable or very

8

difficult of accurate estimate." *Wasserman's, Inc. v. Twp. of Middletown*, 137 N.J. 238, 249-251 (1994) (internal quotation marks omitted).  The overall single test of validity of a liquidated damages clause is whether it is "reasonable under the totality of the circumstances."  *Metlife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 159 N.J. 484, 495 (1999) (internal quotation marks omitted).  Liquidated damages clauses substantially similar to the clauses at issue in this case have been enforced by way of summary judgment on numerous occasions in this district.  (*See* D.E. No. 37-1, Brief in Support of Plaintiff DIW's Motion for Summary Judgment ("Mov. Br.") at 11-12 (listing cases)).

Here, the liquidated damages clauses in sections 12.1 and 18.1 of the Franchise Agreement are clear and unambiguous and demonstrate a good faith attempt by the parties to reasonably forecast the loss resulting from early termination of the Franchise Agreement.  Furthermore, the Court is satisfied that actual damages for breach of the Franchise Agreement are nearly impossible to estimate with certainty.  (*See id.* at 13).  Since the liquidated damages clauses in sections 12.1 and 18.1 appear to be reasonable and enforceable, the Court concludes that DIW is entitled to the liquidated damages provided for in the Agreement.

The Franchise Agreement set forth that the liquidated damages for the guest lodging facility would be the product of $1,000.00 multiplied by the number of guest rooms that DB Vancouver was authorized to operate at the time the Agreement was terminated.  (Franchise Agr. § 18.1).  At the time of termination, DB Vancouver operated fifty-eight rooms.  (SMF ¶ 45; Fenimore Aff. ¶ 40).  Thus, DIW is entitled to $58,000.00 in liquidated damages.  As detailed below, DIW is also entitled to prejudgment interest in the amount of $20,534.80 on the liquidated damages figure. (Fenimore Aff. ¶ 41).  Accordingly, the Court grants summary judgment to DIW in the amount of $78,534.80 as liquidated damages.

### 3.    Prejudgment Interest

In determining the availability of prejudgment interest on state law claims, the Court considers New Jersey state law, consistent with the Franchise Agreement's choice of law provision.  Under New Jersey law, prejudgment interest "has been regarded . . . as compensatory— to indemnify the plaintiff for the loss of what the monies due him would [p]resumably have earned if payment had not been refused."  *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 N.J. 474, 506 (1974).   Prejudgment interest may be applied to both liquidated and unliquidated damages.  *Busik v. Levine*, 63 N.J. 351, 358-59 (1973).

Section 7.3 of the Franchise Agreement provides for prejudgment interest to be assessed at the rate of 1.5% per month.  (Franchise Agr. § 7.3).  This provision is clear and unambiguous. Accordingly, the Court grants DIW its requested prejudgment interest, as set forth above.

### 4.    Attorneys' Fees and Costs

Under New Jersey law, in a breach of contract action, legal expenses can be recovered if the contract between the parties so provides.  *See Papalexiou v. Tower W. Condo.*, 401 A.2d 280, 287 (N.J. Super. Ct., Ch. Div. 1979).  Again, attorneys' fees and costs are addressed in a clear and unambiguous provision of the Franchise Agreement, which the Guaranty incorporates by reference.  In particular, section 17.4 of the Franchise Agreement states that the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Franchise Agr. § 17.4).  As the prevailing party in this case, DIW is thus entitled to reasonable attorneys' fees and costs that it incurred in connection with this action.

As set forth in the Certification of Mr. Couch, DIW has incurred attorneys' fees in connection with this matter in the total amount of $8,100.00, which were charged by the firms of

Clyde & Co US, LLP and LeClairRyan.  (Couch Cert. ¶ 16).  The Court is satisfied that the included billing records adequately show that the specific legal services provided by Clyde & Co US, LLP and LeClairRyan included preliminary consultations with the client, reviewing relevant documents, researching potential causes of action, drafting, revising, and finalizing the Complaint, ascertaining the identities and location of Defendants, arranging for service of process, preparing written discovery requests, and preparing and submitting the instant application for summary judgment.  (*See* Couch Cert. ¶ 17; Couch Cert., Ex. M).  Additionally, DIW has incurred expenses in connection with this matter in the amount of $2,736.36, which includes filing fees, reproduction expenses, services of process fees, postage, and overnight courier expenses.  (*See* Couch Cert. ¶ 18; Couch Cert., Ex. M).  Accordingly, the Court grants DIW $8,100.00 in attorneys' fees and $2,736.36 in costs and expenses.

**V.      Conclusion**

For the reasons set forth above, the Court grants DIW's motion for summary judgment on the Sixth Count of the Complaint against Sant Prakash Bhagat, Pranav Patel, Pankai Bhagat, and Jatin Bhagat.

Accordingly, IT IS on this 25th day of June 2015,

**ORDERED** that DIW's motion for summary judgment, (D.E. No. 37), is GRANTED; and it is further

**ORDERED** that judgment is entered for DIW and against Defendants for $143,812.60 in Recurring Fees (inclusive of prejudgment interest); and it is further

**ORDERED** that judgment is entered for DIW and against Defendants for $78,534.80 in liquidated damages (inclusive of prejudgment interest); and it is further

**ORDERED** that judgment is entered for DIW and against Defendants for $8,100.00 in attorneys' fees and $2,736.36 in costs and expenses.


_s/ Esther Salas_____
**Esther Salas, U.S.D.J.**